# TUCKER LEVIN, PLLC

DUNCAN P. LEVIN
DIRECT DIAL: 646-445-7825
DLEVIN@TUCKERLEVIN.COM

230 PARK AVENUE, SUITE 440
NEW YORK, NEW YORK 10169
212-330-7626
FACSIMILE: 212-422-3305

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/19/19

November 17, 2019

11/19/2019

*The request is denied. The sale may proceed.*

*So Ordered.*
*Paul Crotty*
*USDJ*

ELECTRONICALLY FILED

Hon. Paul A. Crotty
United States District Court
Southern District of New York
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

Re: United States v. Purna Aramalla
S1 14-Cr.-247 (PAC)

Dear Judge Crotty:

    We write with a matter of much urgency: to ask the Court to order immediately the government to cease from entering into a contract for the sale of unforfeited property in the above-captioned case. This is a matter of urgent import, as the government just informed us that a sale contract is about to be effectuated, likely this week. As set forth below, the U.S. has no right to sell this unforfeited property or to evict my client, against whom they have *never* brought any forfeiture action and who owns the property jointly. There is no basis in law for the government's actions here, and a manifest injustice is likely without the Court's intervention.

    By way of background, this Firm represents Usha Aramalla, who has been married to the defendant, Purna Aramalla, for more than thirty-eight years. Following his July 25, 2014 plea, Mr. Aramalla agreed to the entry of an approximately $7.5 million Forfeiture Order. The Order contained an unusual provision that, if Mr. Aramalla did not satisfy the payment of the $7.5 million judgment within three years, he would forfeit the real property located at 9 Ariel Court, Sands Point, New York (the "House") (See docket entry number 29). The only problem with this grand plan was that Mrs. Aramalla was and still is a co-owner of the house, and she was not a signatory to that Forfeiture Order in any way. Mrs. Aramalla did not understand – understandably so – that what the government meant by pledging the house as "collateral" was really, in essense, an extra-judicial forfeiture leading to a permanent deprivation of the home. The Forfeiture Order did not give the government any right to take away from Mrs. Aramalla the home that she helped build herself and that was built with untainted funds long before any alleged crimes. She certainly did not ever think that her house could be taken away without any formal process in a court of law overseen by a Federal Judge.

    Lo and behold, three years later, when the judgment was not paid, the government decided to take the House, and they did so via stipulation and Order dated June 15, 2018 (Docket Entry number

57). In this document, Mrs. Aramalla *for the first time ever* appears to have signed a stipulation to vacate the property. And not even to forfeit it – but merely to vacate it. There is *no* signature line on this document reflecting an independent lawyer appearing on behalf of Mrs. Aramalla. Mrs. Aramalla: (1) did not understand what she was signing; and (2) signed the document under duress. But beyond that fatal defect, there is an even bigger problem: the United States never brought any forfeiture action against her half of the property, and she never consented to the forfeiture of the House. A stipulation to vacate is not legally sufficient to forfeit someone's home.

The story gets worse from here. Since that time, Mrs. Aramalla hired the undersigned law firm and has entered into more than a dozen stipulations that allow her to live in the House while the property is being marketed and sold. She made that decision because the government was marketing the house for between approximately $10-$15 million, and she held out significant hope that she would recover millions of dollars when the House was sold for more than $7.5 million, the amount of the forfeiture order against her husband. Shockingly, on Wednesday of this past week, November 13, 2019, the undersigned received an email from the U.S. Attorney's Office stating blithely that an offer of only $6.0 million had been received and accepted. We inquired immediately whether, given this shockingly low price, the government would permit my client to outbid the other bidder, and the U.S. Attorney's Office responded with a one-sentence email that the government would not entertain any offers from Mrs. Aramalla. Given the low amount of the sale (coupled with the outstanding $5 million mortgage that has not been paid in several years, interest, and broker's fees), it is likely that the government is getting any money from this sale. It is thus further confounding that the U.S. Attorney's Office would not at least consider allowing my client to buy her own house back.

We very respectfully ask the Court to postpone the sale of this property until it can be presented with the full facts of this forfeiture action against the Aramallas' family house. Mrs. Aramalla has never agreed to its forfeiture, and the government never should have demanded that she sign a notice to vacate without any due process of a forfeiture proceeding. It is simply wrong of the government to ask her to "vacate" her house, and they should not be permitted to enter into an egregiously low-ball contract of sale before the Court can have a full factual record is made. We very much appreciate the Court's immediate intervention to thwart a miscarriage of justice.

Respectfully submitted,

Duncan P. Levin, Esq.
*Counsel for Usha Aramalla*
(212) 330-7626

cc: All parties (via ECF)